THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | Case No. |
| ) | |
| v. ) | |
| ) | |
| ALTMAN MANAGEMENT COMPANY, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

1. Scottsdale Insurance Company brings this action to obtain a declaratory judgment finding that the subject matter of the appraisal invoked by Altman Management Company ("Altman") is a coverage question that must be decided by this Court in this action, or in the alternative, finding that Altman Management Company's appointed appraiser, namely, its own public adjuster, is not "disinterested," as required by the terms of the operative insurance policy. No other court is capable, at present, of affording Scottsdale the relief that it seeks.

**JURISDICTION AND VENUE**

2. Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

3. Defendant, ALTMAN MANAGEMENT COMPANY ("Altman"), is a corporation organized under the laws of Florida with its principal place of business in Boca Raton, Florida. At all times relevant hereto, Altman was the manager of an apartment complex located at 1010 Eastlawn Drive, Midland, Michigan 48642 ("Building").

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because: (a) there is complete diversity of citizenship between Plaintiff, Scottsdale, on the one hand, and Defendant, Altman, on the other hand, and (b) the amount in controversy well exceeds $75,000.

5.      Venue is appropriate under 28 U.S.C. § 1391(b)(2), as the Building where the subject loss occurred, and the repair of which is the focal point of the dispute between Scottsdale and Altman, is located within this District.

6.      An actual justiciable controversy exists between Scottsdale, on the one hand, and Altman, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liabilities of the parties hereto and to grant such relief as it deems necessary and proper.

## POLICY

7.      Scottsdale issued to Altman a commercial property insurance policy, No. FXS0000732, effective February 1, 2017 to February 1, 2018 ("Policy"). The Policy provides, in pertinent part, excess coverage for the Building. A true and correct copy of the Policy is attached hereto as **Exhibit A**.

8.      The Policy contains an appraisal provision that provides:

> **23.    Appraisal**
>
> In case the Insured and this **Insurer** shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within Twenty (20) days of such demand. …

9.      The Policy provides coverage for, in pertinent part:

> **11.    Business Interruption**
>
> **A.     Gross Earnings**
>
> 1.      Loss due to the necessary interruption of business conducted by the Insured, whether total or partial, including all interdependencies between or among companies owned or operated by the Insured, resulting from physical loss or damage insured herein and occurring during the term of this policy to real and/or personal property insured herein.

* * *

    **14. Rental Value and Rental Income**

        1. This policy provides coverage for Loss of Rental Income and/or Loss of Rental Value of the Insured caused by physical loss or damage insured herein occurring during the term of this policy to property and/or premises rented, leased or occupied by the Insured and/or rented or leased by the Insured to others.

                      \* \* \*

        5. Period of Recovery: the length of time for which a loss may be claimed under this provision shall be in accordance with the loss provisions applicable under the Period of Recovery clause.

10. With respect to the Period of Recovery, the Policy provides:

    **16. Loss Provisions Applicable to Business Interruption – Gross Earnings, Extra Expense, Rental Value)**

        A. Period of Recovery

            The length of time for which loss may be claimed is referred to as the period of recovery and:

            1. shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

            2. shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

                    and

            3. such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

                (a) the date on which the liability of the Insurer for loss or damage would otherwise terminate; or

                (b) the date on which repair, replacement or rebuilding of the property that has been

>> damaged is actually completed and the Insured has resumed normal operations.
>
> but in no event for more than the number of consecutive days as stated in the Limits of Liability clause of this policy thereafter said late commencement date;
>
> \* \* \*
>
> 6. The Period of Recovery shall not include any additional time required for making changes to the buildings, equipment or contents, regardless of the reason(s) for the changes, except as provided for in the Demolition and Increase Cost of Construction provision of the Additional Coverages section …

\* \* \*

## THE LOSS TO THE BUILDING

11. On July 31, 2017, a fire occurred at the Building. Altman subsequently requested that its three primary insurers, United Specialty Insurance Company, Interstate Fire and Casualty Company, and Lloyd's of London, provide coverage for the Building's damage.

12. Shortly thereafter, Altman retained Globe Midwest Adjusters ("Globe") as its public adjuster for the loss. Bobby Levin is the Chairman and President of Globe.

13. J.S. Held, LLC ("J.S. Held"), the insurers' consulting firm, initially estimated that tenants could move back into the Building between April 22, 2018 and June 16, 2018. Altman did not object to this estimate.

14. On or about March 29, 2018, when it became apparent that the primary insurers' limits of liability would ultimately be exhausted, Scottsdale was provided with notice of this loss.

15. On June 14, 2018, Scottsdale was provided an updated construction schedule by J.S. Held, reflecting a period of restoration ending on April 28, 2019, approximately 21 months from the date of loss. Altman did not object to this estimate either.

16. On August 9, 2018, Altman submitted a proof of loss to Scottsdale in the amount of $1,000,000 for lost rents and $142,852.86 for the actual cash value of repairs to the Building.

17. On August 29, 2018, Scottsdale made an advance payment of $50,000 for repairs, but could not advance other payments until it received additional documentation substantiating the reasonableness of claimed repairs.

18. On or about September 13, 2018, Scottsdale issued a $750,000 payment for Altman's lost rents.

19. By November 14, 2018, Altman had received payments from all of its insurers totaling $8.5 million for repairs to the Building and $1.94 million in lost rents.

20. Substantial payments notwithstanding, Altman failed to commence construction on the Building, due, at least in part, to its insistence on including building upgrades, which were above minimum code requirements.

21. Scottsdale next paid Altman an additional $701,847.41 for lost rents in January 2019 and another $162,695.50 for building repairs in February 2019.

22. By a letter dated March 18, 2019, Scottsdale informed Altman that its period of recovery would end on or before April 30, 2019. A true and correct copy of the letter is attached hereto as **Exhibit B**.

## THE APPRAISAL

23. In a letter dated April 19, 2019, Altman demanded an appraisal concerning the amount of business income and extra expense owed and the amount of time that constitutes the period of recovery. A true and correct copy of the letter is attached hereto as **Exhibit C**.

24. In its letter, Altman contends that its delays in commencing construction were the direct and proximate result of Scottsdale's delay in agreeing to pay for the actual cash value and the replacement cost value of the Building.

22897375.v2

25.     Altman takes no responsibility for the delays in commencing construction as caused by its insistence on building improvements.

26.     Altman contends that Scottsdale's alleged delays in making payments can extend the "period of recovery" beyond what is set forth in Paragraph 2. of that Policy provision.

27.     Altman selected Robert Levin of Globe as its appraiser, despite Mr. Levin having advocated, as Altman's agent and representative, against Altman's insurers and the insurers' consultants for almost two years and Mr. Levin having a financial incentive in the amount of Altman's recovery.

28.     In a letter dated May 9, 2019, Scottsdale objected to Altman's invocation of appraisal based on there being no factual dispute concerning the length of time the repair of the Building should have taken. Scottsdale explained instead that Altman's contentions about its entitlement to ongoing business income and extra expense payments presents a legal question of whether Altman's period of recovery can be extended, as a matter of law, based upon Scottsdale's alleged delays in making payments. A true and correct copy of the letter is attached hereto as **Exhibit D**.

29.     Scottsdale also advised Altman that Mr. Levin is not a "disinterested" appraiser, as required by the Policy.

## COUNT I – DECLARATORY JUDGMENT

30.     Scottsdale incorporates by reference paragraphs 1-29 above as if fully stated herein.

31.     Pursuant to the Policy, either party may invoke the appraisal process when "the Insured and this Insurer shall fail to agree as to the amount of loss."

32.     Whether Scottsdale's actions can extend Altman's period of recovery, as set forth in the Policy, does not involve a calculation of "the amount of loss" and instead presents a purely legal question reserved for the courts. There is no reason appraisers should interpret the language of the

Policy's period of recovery provision and adjudge whether an insurer's conduct may extend a period of recovery beyond what would otherwise be a reasonable time to repair a building.

33.　　Even if Scottsdale delayed in agreeing to pay certain amounts for the repair of the Building, that does not extend the period of recovery.

34.　　Pursuant to the Policy, Altman was required to name a "disinterested" appraiser.

35.　　However, given Mr. Levin's contractual, economic, and historical relationship with Altman, he does not qualify as a "disinterested" appraiser.

WHEREFORE, Plaintiff SCOTTSDALE INSURANCE COMPANY respectfully requests this Court enter a declaratory judgment in its favor and against defendant ALTMAN MANAGEMENT COMPANY, declaring, adjudging, and decreeing as follows:

A.　　That the question of whether Altman's period of recovery could be extended due to Scottsdale's alleged delay in agreeing to make payments is a legal question that is not within the scope of the appraisal process;

B.　　That Altman incorrectly and improperly invoked the Policy's appraisal provision, which is hereby null and void;

C.　　That, as a matter of law, Scottsdale's alleged delay in agreeing to make payments to Altman cannot extend Altman's period of recovery;

D.　　That Mr. Levin is not a "disinterested" appraiser as required by the Policy; and

E.　　That Scottsdale is entitled to such other and further relief as this Court deems appropriate.

DATED:  May 10, 2019                           Respectfully submitted,

                                                    **GOLDBERG SEGALLA, LLP**

                                                    By: /s/ Jonathan L. Schwartz
                                                    Attorney for Scottsdale Insurance Company

Jonathan L. Schwartz (ARDC #6287338)
GOLDBERG SEGALLA LLP
**Mailing Address:**
P.O. Box 957
Buffalo, NY 14201
**Physical Address:**
222 W. Adams St., Suite 2250
Chicago, IL 60606
jschwartz@goldbergsegalla.com