UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTTSDALE INSURANCE COMPANY,

        Plaintiff,

v

        Case No. 19-11405
        Honorable Thomas L. Ludington

ALTMAN MANAGEMENT COMPANY,

        Defendant.
_____/

**ORDER GRANTING DECLARATORY JUDGMENT IN PART, DISMISSING THE REMAINDER OF DECLARATORY JUDGMENT, GRANTING MOTION TO DISMISS IN PART, AND DIRECTING IMPLEMENTATION OF THE APPRAISAL PROVISION OF THE POLICY**

On May 10, 2019, Plaintiff Scottsdale Insurance Company ("Scottsdale") filed a complaint against Defendant Altman Management Company ("Altman"). ECF No. 1. The complaint seeks a declaratory judgment addressing a policy of commercial insurance issued by Scottsdale to Altman, its insured. *Id*. at PageID.2. More specifically, Scottsdale seeks a judicial determination that Altman's period of recovery under the policy is a legal question for the Court and thus not to be determined by an appraiser under the policy. *Id*. at PageID.7.

On July 8, 2019, Altman filed a Motion to Dismiss the Complaint. ECF No. 4 at PageID.98. For the following reasons, the motion will be granted in part and denied in part.

**I.**

Altman Management Company is a Florida corporation and manager of an apartment complex located at 1010 Eastlawn Drive, Midland, Michigan, 48642 ("Building"). ECF No. 1 at PageID.1. Altman purchased a commercial property insurance policy for excess coverage from Scottsdale effective February 1, 2017 to February 1, 2018 ("Policy"). *Id.* at PageID.2.

**A.**

The Policy provided coverage for business interruptions. It provides:

> 11. Business Interruption
>
>    A. Gross Earnings
>
>    1. Loss due to the necessary interruption of business conducted by the Insured, whether total or partial, including all interdependencies between or among companies owned or operated by the Insured, resulting from physical loss or damage insured herein and occurring during the term of this policy to real and/or personal property insured herein.

*Id.* at PageID.52.

The policy also provides for coverage for Altman's loss of rental value or rental income, providing as follows:

> 14. Rental Value and Rental Income
>
>    1. This policy provides coverage for Loss of Rental Income and/or Loss of Rental Value of the Insured caused by physical loss or damage insured herein occurring during the term of this policy to property and/or premises rented, leased or occupied by the Insured and/or rented or leased by the Insured to others.
>
>    2. Rental Income shall include the following:
>
>        (a) The total anticipated gross rental income from tenant(s) of the Insured's building(s) and structure(s), and
>
>        (b) The amount of all charges assumed by tenant(s) except those charges which do not continue, which would otherwise be obligations of the Insured, and
>
>        (c) The fair rental for that portion occupied by the Insured.
>
>    \*\*\*\*\*
>
>    5. Period of Recovery: the length of time for which a loss may be claimed under this provisions shall be in accordance with the loss provisions applicable under the Period of Recovery clause [sic]

*Id.* at PageID.55-56.

The Policy limited Altman's Period of Recovery for a claim, providing as follows:

16. Loss Provisions Applicable to Business Interruption – Gross Earnings, Extra Expense, Rental Value)

   A. Period of Recovery

   The length of time for which a loss be claimed is referred to as the period of recovery and:

   1. shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

   2. shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

      and

   3. such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

      a) the date on which the liability of the Insurer for loss or damage would otherwise terminate; or

      b) the date on which repair, replacement or rebuilding of the property that has been damaged is actually completed and the Insured has resumed normal operations.

      but in no event for more than the number of consecutive days as stated in the Limits of Liability clause of this policy thereafter from said later commencement date.

ECF No. 1-1 at PageID.59.

If the parties disagree as to amount of loss, the Policy provides for the use of appraisers. It provides:

23. Appraisal

   In case the Insured and this Insurer shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within Twenty (20) days of such demand. The appraisers shall select a competent and disinterested umpire…The appraisers shall then appraise the loss, separating the loss to each item; and, failing to agree, shall submit their differences only

> to the umpire. An award in writing, so itemized of any two when filed with the Insurer, shall determine the amount of loss…

ECF No. 1-1 at PageID.63.

**B.**

On July 31, 2017, a fire occurred in Altman's building. ECF No. 1 at PageID.4. Altman made requests to its three primary insurers (United Specialty Insurance Company, Interstate Fire and Casualty Company, and Lloyd's of London) for damage to the Building. *Id.* Plaintiff retained Globe Midwest Adjusters ("Globe") as its public adjuster, of which Robert Levin is the Chairman and President. *Id*. The insurers retained J.S. Held, LLC ("Held") as a consulting firm. *Id*. Altman notified Scottsdale of the fire on or about March 29, 2018, once it was "apparent" that the primary insurers' limits of liability would be exhausted. *Id*. at PageID.4.

Initially, Held estimated that the reconstruction would be concluded and that tenants could move back into the Building between April 22 and June 16, 2018. *Id*. However, on June 14, 2018, Held provided an updated construction schedule, anticipating that the period of restoration would be completed by April 28, 2019. *Id*.

On August 9, 2018, Altman submitted a proof of loss to Scottsdale in the amount of $1,000,000 for lost rents and $142,852.86 for repairs to the Building. *Id*. at PageId.5. On August 29, 2018, Scottsdale made an advance payment of $50,000 for repairs, but did not advance other payments because it was awaiting additional documentation. *Id*. On or about September 13, 2018, Scottsdale issued a $750,000 payment for Altman's lost rents. *Id*. By November 14, 2018, Altman had received $8.5 million for repairs to the Building and $1.94 million for lost rents from all of its insurers. *Id*.

In January 2019, Scottsdale paid Altman an additional $701,847.41 for lost rents. *Id*. In February 2019, Scottsdale paid Altman an additional $162,695.50 for building repairs. *Id*.

## C.

On March 18, 2019, Scottsdale's legal counsel Jonathan L. Schwartz sent a letter to Howard Mishne of Altman informing him that the period of recovery would end on or before April 30, 2019. ECF No. 1-2. It provided:

> Altman's period of recovery has extended far beyond initial projections, and the additional time still needed for the Green Hill Apartments to be fully repaired or rebuilt is not the product of diligence to resume business operations. As such, please understand Altman's period of recovery under the Policy will end on or before April 30, 2019.
>
> Altman manages Green Hill Apartments, which sustained fire damage on July 31, 2017. The fire damage rendered the building uninhabitable for all 174 tenants in the building. On August 11, 2017, VeriClaim, Altman's maintenance staff, the City of Midland fire personnel, and you completed a walkthrough of the building and agreed upon the basic scope of repairs. The construction schedule originally prepared by JS Held estimated that all repairs would be completed by March or April 2018 and all tenants would move back into the building by June 2018. You originally submitted a period of recovery through July 2018.
>
> However, there have been numerous delays. For instance, permit approval, which should have completed by October 6, 2017, did not commence until after November 2017. After the delays, VeriClaim determined the project should be completed in early 2019. Similarly, JS Held calculated a period of recovery from March 1, 2018 to April 28, 2019. However, from at least December 2017 to until October 2018, there was inexplicably no construction activity on the building.
>
> The main reason for the period of recovery being prolonged well beyond the original estimates is Altman has been installing or attempting to install betterments, including, but not limited to, the following completed or proposed installations that are beyond code requirements: sprinkler system, electrical service, gypsum ceiling soffit enclosures, wet standpipe systems, fire-resistive interior wall and door assemblies, standby power to existing elevators, wood stud walls replacing existing cabinet veneers, and upgraded kitchen sinks and faucets.

ECF No. 1-2 at PageID.81.

Altman's attorneys responded the next month. His letter provided:

> As you and your client are well aware, we disagree with the conclusions and assertions set forth in your letter concerning the period of recovery for which my client is entitled to receive business interruption and extra expense payments under the policy of insurance…The delays in commencing construction are the direct and

proximate result of Scottsdale's failure to agree to the actual cash value and replacement cost value determinations made in January, 2018 by the underlying insurance carriers until February 19, 2019. Without an agreement from Scottsdale that it would make the payments previously determined to be owed by the adjusters in this matter, my client was unable to enter into acontract [sic] with a general contractor to commence construction. My client has acted with due diligence and dispatch since the loss to complete the repairs to the property as soon as possible.

The fact that Scottsdale Insurance Company is attempting to cutoff the business interruption and extra expense benefits as of April 30, 2019, when it failed to agree to the amount that it would pay as the ACV and RCV of the building losses until February 19, 2019, is outrageous…

[S]ince there is a disagreement concerning the amount of loss, both as to the amount of business income and extra expenses owed and the amount of time which constitutes the period of recovery, we hereby demand that Scottsdale Insurance Company submit to binding appraisal pursuant to the policy of insurance and MCL 500.2833(1)(m).

ECF No. 1-3 at PageID.87-88.

On May 9, 2019, Scottsdale responded to Altman's demand for appraisal. ECF No. 1-4 at PageID.90. The letter explained that Altman's first submission of a proof of loss on August 9, 2018, for $1,000,000 for lost rents and $142,852 for actual cash value of the building could not be completed because Scottsdale required more documentation to "substantiate the reasonableness of the claimed repairs." *Id.* at PageID.91. Nevertheless, Scottsdale advanced $50,000 to Altman on August 29, 2018 for repairs and then an additional $750,000 for lost rents. *Id.* Moreover, Scottsdale claimed that by November 14, 2018, Altman had received payments from its insurers totaling $8.5 million for the repairs to the building and $1.94 million for lost rents. *Id.* An estimate from March 28, 2018 showed repairs costing $10,926,815. *Id.* at PageID.90. Scottsdale emphasized that no construction took place for nearly a year despite two reputable contractors having immediate availability to commence repairs. *Id.* at PageID.91. Indeed, Scottsdale alleged that the delays were due to Altman waiting for quotes to complete renovations and upgrades to the Building. *Id.* The

letter further requested documentation substantiating Altman's claims that Scottsdale did not agree to the determinations for building repairs until February 2019. *Id*.

Finally, Scottsdale objected to Altman's demand for appraisal. *Id*. at PageID.92. Scottsdale concluded that the dispute between the parties was "ineligible for resolution by appraisal" because the Policy allowed for appraisal only in the event that the parties "fail to agree as to the amount of the loss." *Id*. Scottsdale contended that the dispute did not concern "what the period of recovery should have been," but rather "Altman's contention that the period of recovery should be extended based on [Scottsdale's] alleged withholding of certain payments." *Id*. According to Scottsdale, the dispute was a "coverage or purely legal question, one that must be reserved for the courts." *Id*. Scottsdale also objected to Altman's designated appraiser, Mr. Levin, as Scottsdale asserted that Mr. Levin did not meet the Policy requirements of being "disinterested" given Globe's contract with Altman as its public adjuster.[1] *Id*.

## II.

Defendant has now moved for dismissal of Scottsdale's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In

---

[1] This issue has since been resolved because "Altman has withdrawn Robert Levin as its appraiser and in his place has nominated Gerald Kolb…". Def.'s Mot. Dismiss, ECF No. 4 at PageID.107.

essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679-79 (quotations and citation omitted).

## III.

### A.

In Michigan, "a policy of insurance is much the same as any other contract. It is a matter of agreement by the parties. The courts will determine what that agreement was and enforce it accordingly." *Eghotz v. Creech*, 113 N.W.2d 815, 816 (Mich. 1962). Courts are to interpret the policy coverage of fire insurance agreements, but disagreements regarding the actual cash value or amount of loss may be determined by appraisers. *Angott v. Chubb Group of Ins. Cos.*, 717 N.W.2d 341, 347 (Mich. Ct. App. 2006) ("[T]he issue of an insurance policy's coverage is for the court to decide, not the appraisers."); *UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, 2014 WL 1652201 at *3 (E.D. Mich. Apr. 23, 2014) ("When the amount of loss is in dispute, the appraisal process is preferred over judicial determination because it is 'a simple and inexpensive method for the prompt adjustment and settlement of claims.'") (quoting *Auto-Owners Ins. Co. v. Kwaiser*, 476 N.W.2d 467, 469 (Mich. Ct. App. 1991).

Michigan law provides:

(1) Each fire insurance policy issued or delivered in this state shall contain the following provisions…

(m) That if the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss or the actual cash value be set by appraisal. If either makes a written demand for appraisal, each party shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after receipt of the written demand. The 2 appraisers shall then select a competent, impartial umpire…The appraisers shall then set the

> amount of the loss and actual cash value as to each item. If the appraisers submit a written report of an agreement to the insurer, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any 2 of these 3 shall set the amount of the loss…

MCL 500.2833. Here, the Policy language is consistent with MCL 500.2833 because it requires the parties to engage an appraiser when there is a dispute regarding an amount of loss. ECF No. 1-1 at PageID.63 ("In case the Insured and this Insurer shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser.").

**B.**

As explained above, Altman invoked the Policy's appraisal provision in April 2018, contending that "there is a disagreement concerning the amount of loss." ECF No. 1-3 at PageID.87-88. Scottsdale contests Altman's invocation of the appraiser provision. Scottsdale's May 9, 2019 letter to Altman on the matter provides:

> Your letter concludes by invoking appraisal for claims for business income loss and extra expense payments. This dispute, however, is ineligible for resolution by appraisal. Please know that the Appraisal Provision in the Policy allows for appraisal in the event Altman and the Company "fail to agree as to the amount of the loss." Here, the parties do not appear to dispute what the period of recovery should have been, or how much time should have been needed to complete the repairs but for Altman's delay, so contends the Company, or the Company's delay, so contends Altman. Hence, "the amount of the loss" is undisputed. *By contrast, the dispute centers on Altman's contention that the period of recovery should be extended based on the Company's alleged withholding of certain payments. That is a coverage or purely legal question, one that must be reserved for the courts.*

ECF No. 1-4 at PageID.92 (emphasis added). Scottsdale further opposes Altman's invocation of the appraiser provision in its complaint and in its response to Altman's motion to dismiss the complaint. ECF No. 1 at PageID.6 ("Scottsdale objected to Altman's invocation of appraisal based on there being no factual dispute concerning the length of time the repair of the Building should have taken."); ECF No. 7 at PageID.154 ("[T]he 'amount of loss' is not in dispute – the dispute is

whether construction delays allegedly attributable to Scottsdale's coverage position are covered and may be included in the 'amount of the loss.' That dispute is wholly inappropriate for an Appraisal Panel to decide.").

Scottsdale correctly argues that the question of whether the period of recovery under the policy may be extended because of an insurer's delay in payment raises a question of policy interpretation and thus, a question of law. Sound legal authority, however, supports the proposition that the period of recovery may be extended if caused in substantial part by a delay in payment by an insurer. Appraisers, however, can make the factual determination of whether payment was withheld and how much weight that factor should bear in assessing the length of the period of recovery.

In *UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, UrbCamCom/WSU I, LLC ("Union") owned an apartment building that sustained water damage in January 2012. *UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, 2014 WL 1652201 (E.D. Mich. Apr. 23, 2014). Lexington, the insurer, refused to pay business interruption losses after September 2012. Union then filed a lawsuit against Lexington, "seeking a declaratory judgment that all disputes concerning the business interruption loss claim be submitted to an Appraisal Panel, that [the] court determine the 'period of restoration' is a fact issue for the Appraisal Panel, and enter a judgment in the amount of the Appraisal award plus interest." *Id.* at *1.

The court determined that the calculation of the restoration could be determined by an appraiser. "In sum, the dispute over Union's business interruption claim [was] a factual dispute only as to the amount owing, not a dispute over whether coverage exits." *Id*. at *8. Indeed, the court was careful to specify that the appraisal panel was not "being called upon to interpret the policy or to determine whether any exclusions apply, but only to evaluate losses based on an

analysis of the damage to the property … and a determination of the reasonable time it would take to undertake repair." *Id*. It further concluded that the "period of restoration" is a "fact question over the amount of the loss, not a coverage issue for the court to decide." *Id.*

The *UrbCamCom* court cited to *Amerex Group, Inc. v. Lexington Ins. Co.* in which the 2nd Circuit determined that "the calculation of the restoration period, unless subject to legal challenges, is a factual question about damages – albeit sometimes a complex and contentious one – appropriately addressed by an appraiser." *Amerex Group, Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 205 (2d Cir. 2012). The court concluded that when determining the restoration period, the appraiser could consider the insurer's delay in paying the claim. It held that "it is for the Appraisal Panel, and not this court, to determine the weight, if any, to afford to these circumstances." *UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, 2014 WL 1652201, *8 (E.D. Mich. Apr. 23, 2014).

The court in *G&S Metal Consultants, Inc. v. Cont'l Cas. Co.* reached a similar conclusion. Continental was the insurer and GSMC was the insured. The opinion provides:

> …Continental's actions may have extended the period of restoration. The inquiry is how long it would have taken GSMC to resume operations had it acted "as quickly as possible." If Continental delayed payment, even if not in breach of the Policy, that logically could have extended the period of time it would have taken GSMC to resume operations.

*G&S Metal Consultants, Inc. v. Cont'l Cas. Co.*, 200 F.Supp. 3d 760, 771 (N.D. Ind. 2016).[2] The court in *United Land Inv'rs, Inc. v. N. Ins. Co. of Am.* also reached a similar conclusion, explaining that:

> [P]laintiff could not commence repairs until he received the money to complete the work. Until plaintiff and the insurance company had arrived at the amount which was paid, plaintiff was in no position to contract for or begin the repairs to the building.

---

[2] The court had previously determined that Continental had waived the appraisal provision. Accordingly, the factual question regarding the period of restoration was left to the jury to decide.

*United Land Inv'rs, Inc. v. N. Ins. Co. of Am.*, 476 So.2d 432, 438 (La.Ct.App. 1985).[3] Accordingly, it is a factor that should be considered by an appraiser when determining the period of recovery.

So too here. The determination of the restoration period is a factual question about damages. Among the factors the appraiser may consider is whether Scottsdale delayed paying the claim or providing contractors with reasonable assurances of payment and if so, whether the delay should extend the restoration period. Indeed, this is not a remarkable principle. Providing otherwise would create an incentive for insurers to delay or hinder covered payments in order to limit the insured's period of reconstruction coverage. Michigan law has always presumed and required the good faith performance of both parties to a contract agreement. *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (1992) ("[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.").

Determining whether Scottsdale delayed payment and how much weight that should bear on the length of the restoration period is however a factual question appropriately addressed by the appraisers.

**IV.**

Accordingly, Plaintiff's action for declaratory judgment will be entered in part and denied in part. Plaintiff seeks declaratory action seeking judgment for the following.

- A. That the question of whether Altman's period of recovery could be extended due to Scottsdale's alleged delay in agreeing to make payments is a legal question that is not within the scope of the appraisal process;

- B. That Altman incorrectly and improperly invoked the Policy's appraisal provision, which is hereby null and void;

---

[3] The court made the factual determination that an extension to the period of recovery was merited. However, there is no mention of an appraisal provision, making it unclear whether the question could have been referred to an appraiser.

C. That, as a matter of law, Scottsdale's alleged delay in agreeing to make payments to Altman cannot extend Altman's period of recovery;

D. That Mr. Levin is not a "disinterested" appraiser as required by the Policy;…

ECF No. 1 at PageID.7.

Judgment for item A. will be granted. The question of whether an insurer's delay in making payment may extend the insured's period of recovery does raise a legal question. The answer to that question is that an insurer's delay in making payment *may* extend the insured's period of recovery. However, whether the insurer in fact delayed payment or, for example, the insured delayed construction to include uninsured betterments, is a factual question to be determined by the appraisers. Scottsdale's alleged delay in payments is a factor that the appraiser may consider in reaching its determination regarding the period of restoration. Accordingly, judgment for item C. will not be granted.

Judgment for item B. will not be granted because it was proper for Altman to invoke the appraisal provision due to the factual question regarding the period of restoration. Lastly, judgment for item D. will not be granted because Altman has "withdrawn Robert Levin as its appraiser and in his place has nominated Gerald Kolb…" Def.'s Mot. Dismiss, ECF No. 4 at PageID.107.

V.

Accordingly, it is **ORDERED** that Plaintiff's action for declaratory judgment, ECF No. 1, is **GRANTED IN PART**. An insurer's delay in making payment may extend the insured's period of recovery. Whether the insurer in fact delayed payment and if so, how much weight it bears on the length of the period of recovery, is a factual question to be determined by the appraisers.

It is further **ORDERED** that the remainder of Plaintiff's action for declaratory judgment is **DISMISSED**.

It is further **ORDERED** that Defendant's motion to dismiss, ECF No. 4, is **GRANTED IN PART**. The Appraisal Provision shall be implemented in accordance with the terms of the Policy.


Dated: October 16, 2019                    s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge