UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SCOTTSDALE INSURANCE COMPANY,

                Plaintiff,

v                                                     Case No. 19-11405
                                                     Honorable Thomas L. Ludington

ALTMAN MANAGEMENT COMPANY,

                Defendant.
_____/

**OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION**

On May 10, 2019, Plaintiff Scottsdale Insurance Company ("Scottsdale") filed a complaint against Defendant Altman Management Company ("Altman"). ECF No. 1. The complaint sought a declaratory judgment addressing a policy of commercial insurance issued by Scottsdale to Altman, its insured. *Id*. at PageID.2. More specifically, Scottsdale sought a judicial determination that Altman's period of recovery under the policy was a legal question for the Court and thus not to be determined by an appraiser. *Id*. at PageID.7.

On July 8, 2019, Altman filed a Motion to Dismiss the Complaint. ECF No. 4. The motion was granted in part and denied in part. ECF No. 9. Plaintiff's action for a declaratory judgment was granted in part, specifically that "[a]n insurer's delay in making payment may extend the insured's period of recovery." *Id.* at PageID.192. The remainder of Plaintiff's action was dismissed.

Scottsdale subsequently filed a motion for reconsideration to which Altman filed a response. ECF Nos. 15, 17. For the following reasons, Scottsdale's motion will be denied.

**I.**

Altman Management Company is a Florida corporation and manager of an apartment complex located at 1010 Eastlawn Drive, Midland, Michigan, 48642 ("Building"). ECF No. 1 at PageID.1. Altman purchased a commercial property insurance policy for excess coverage from Scottsdale effective February 1, 2017 to February 1, 2018 ("Policy"). *Id.* at PageID.2.

**A.**

The Policy provided coverage for business interruptions. It provides:

> 11. Business Interruption
>
>    A. Gross Earnings
>
>       1. Loss due to the necessary interruption of business conducted by the Insured, whether total or partial, including all interdependencies between or among companies owned or operated by the Insured, resulting from physical loss or damage insured herein and occurring during the term of this policy to real and/or personal property insured herein.

*Id.* at PageID.52.

The policy also provides for coverage for Altman's loss of rental value or rental income, providing as follows:

> 14. Rental Value and Rental Income
>
>    1. This policy provides coverage for Loss of Rental Income and/or Loss of Rental Value of the Insured caused by physical loss or damage insured herein occurring during the term of this policy to property and/or premises rented, leased or occupied by the Insured and/or rented or leased by the Insured to others.
>
>    2. Rental Income shall include the following:
>
>       (a) The total anticipated gross rental income from tenant(s) of the Insured's building(s) and structure(s), and

(b) The amount of all charges assumed by tenant(s) except those charges which do not continue, which would otherwise be obligations of the Insured, and

(c) The fair rental for that portion occupied by the Insured.

*****

5. Period of Recovery: the length of time for which a loss may be claimed under this provision shall be in accordance with the loss provisions applicable under the Period of Recovery clause [*sic*]

*Id.* at PageID.55-56.

The Policy limited Altman's Period of Recovery for a claim, providing as follows:

16. Loss Provisions Applicable to Business Interruption – Gross Earnings, Extra Expense, Rental Value)

    A. Period of Recovery

    The length of time for which a loss be claimed is referred to as the period of recovery and:

    1. shall commence with the date of such loss or damage and shall not be limited by the date of expiration of this policy;

    2. shall not exceed such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair, or replace the property that has been destroyed or damaged;

        and

    3. such additional length of time to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

        a) the date on which the liability of the Insurer for loss or damage would otherwise terminate; or

        b) the date on which repair, replacement or rebuilding of the property that has been damaged is actually completed and the Insured has resumed normal operations.

    but in no event for more than the number of consecutive days as stated in the Limits of Liability clause of this policy thereafter from said later commencement date.

ECF No. 1-1 at PageID.59.

If the parties disagree as to amount of loss, the Policy provides for the use of appraisers. It provides:

> 23. Appraisal
>
> In case the Insured and this Insurer shall fail to agree as to the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within Twenty (20) days of such demand. The appraisers shall select a competent and disinterested umpire…The appraisers shall then appraise the loss, separating the loss to each item; and, failing to agree, shall submit their differences only to the umpire. An award in writing, so itemized of any two when filed with the Insurer, shall determine the amount of loss…

ECF No. 1-1 at PageID.63.

**B.**

On July 31, 2017, a fire occurred in Altman's building. ECF No. 1 at PageID.4. Altman made requests to its three primary insurers (United Specialty Insurance Company, Interstate Fire and Casualty Company, and Lloyd's of London) for damage to the Building. *Id.* Plaintiff retained Globe Midwest Adjusters ("Globe") as its public adjuster, of which Robert Levin is the Chairman and President. *Id.* The insurers retained J.S. Held, LLC ("Held") as a consulting firm. *Id.* Altman notified Scottsdale of the fire on or about March 29, 2018, once it was "apparent" that the primary insurers' limits of liability would be exhausted. *Id.* at PageID.4.

Initially, Held estimated that the reconstruction would be concluded and that tenants could move back into the Building between April 22 and June 16, 2018. *Id.* However, on June 14, 2018, Held provided an updated construction schedule, anticipating that the period of restoration would be completed by April 28, 2019. *Id.*

On August 9, 2018, Altman submitted a proof of loss to Scottsdale in the amount of $1,000,000 for lost rents and $142,852.86 for repairs to the Building. *Id*. at PageId.5. On August 29, 2018, Scottsdale made an advance payment of $50,000 for repairs, but did not advance other payments because it was awaiting additional documentation. *Id*. On or about September 13, 2018, Scottsdale issued a $750,000 payment for Altman's lost rents. *Id*. By November 14, 2018, Altman had received $8.5 million for repairs to the Building and $1.94 million for lost rents from all of its insurers. *Id*.

In January 2019, Scottsdale paid Altman an additional $701,847.41 for lost rents. *Id*. In February 2019, Scottsdale paid Altman an additional $162,695.50 for building repairs. *Id*.

## C.

On March 18, 2019, Scottsdale's legal counsel Jonathan L. Schwartz sent a letter to Howard Mishne of Altman informing him that the period of recovery would end on or before April 30, 2019. ECF No. 1-2. It provided:

> Altman's period of recovery has extended far beyond initial projections, and the additional time still needed for the Green Hill Apartments to be fully repaired or rebuilt is not the product of diligence to resume business operations. As such, please understand Altman's period of recovery under the Policy will end on or before April 30, 2019.
>
> Altman manages Green Hill Apartments, which sustained fire damage on July 31, 2017. The fire damage rendered the building uninhabitable for all 174 tenants in the building. On August 11, 2017, VeriClaim, Altman's maintenance staff, the City of Midland fire personnel, and you completed a walkthrough of the building and agreed upon the basic scope of repairs. The construction schedule originally prepared by JS Held estimated that all repairs would be completed by March or April 2018 and all tenants would move back into the building by June 2018. You originally submitted a period of recovery through July 2018.
>
> However, there have been numerous delays. For instance, permit approval, which should have completed by October 6, 2017, did not commence until after November 2017. After the delays, VeriClaim determined the project should be completed in early 2019. Similarly, JS Held calculated a period of recovery from March 1, 2018

to April 28, 2019. However, from at least December 2017 to until October 2018, there was inexplicably no construction activity on the building.

The main reason for the period of recovery being prolonged well beyond the original estimates is Altman has been installing or attempting to install betterments, including, but not limited to, the following completed or proposed installations that are beyond code requirements: sprinkler system, electrical service, gypsum ceiling soffit enclosures, wet standpipe systems, fire-resistive interior wall and door assemblies, standby power to existing elevators, wood stud walls replacing existing cabinet veneers, and upgraded kitchen sinks and faucets.

ECF No. 1-2 at PageID.81.

Altman's attorneys responded the next month. His letter provided:

As you and your client are well aware, we disagree with the conclusions and assertions set forth in your letter concerning the period of recovery for which my client is entitled to receive business interruption and extra expense payments under the policy of insurance…The delays in commencing construction are the direct and proximate result of Scottsdale's failure to agree to the actual cash value and replacement cost value determinations made in January, 2018 by the underlying insurance carriers until February 19, 2019. Without an agreement from Scottsdale that it would make the payments previously determined to be owed by the adjusters in this matter, my client was unable to enter into acontract [sic] with a general contractor to commence construction. My client has acted with due diligence and dispatch since the loss to complete the repairs to the property as soon as possible.

The fact that Scottsdale Insurance Company is attempting to cutoff the business interruption and extra expense benefits as of April 30, 2019, when it failed to agree to the amount that it would pay as the ACV and RCV of the building losses until February 19, 2019, is outrageous…

[S]ince there is a disagreement concerning the amount of loss, both as to the amount of business income and extra expenses owed and the amount of time which constitutes the period of recovery, we hereby demand that Scottsdale Insurance Company submit to binding appraisal pursuant to the policy of insurance and MCL 500.2833(1)(m).

ECF No. 1-3 at PageID.87-88.

On May 9, 2019, Scottsdale responded to Altman's demand for appraisal. ECF No. 1-4 at PageID.90. The letter explained that Altman's first submission of a proof of loss on August 9, 2018, for $1,000,000 for lost rents and $142,852 for actual cash value of the building could not be

completed because Scottsdale required more documentation to "substantiate the reasonableness of the claimed repairs." *Id*. at PageID.91. Nevertheless, Scottsdale advanced $50,000 to Altman on August 29, 2018 for repairs and then an additional $750,000 for lost rents. *Id*. Moreover, Scottsdale claimed that by November 14, 2018, Altman had received payments from its insurers totaling $8.5 million for the repairs to the building and $1.94 million for lost rents. *Id*. An estimate from March 28, 2018 showed repairs costing $10,926,815. *Id*. at PageID.90. Scottsdale emphasized that no construction took place for nearly a year despite two reputable contractors having immediate availability to commence repairs. *Id*. at PageID.91. Indeed, Scottsdale alleged that the delays were due to Altman waiting for quotes to complete renovations and upgrades to the Building. *Id*. The letter further requested documentation substantiating Altman's claims that Scottsdale did not agree to the determinations for building repairs until February 2019. *Id*.

Finally, Scottsdale objected to Altman's demand for appraisal. *Id*. at PageID.92. Scottsdale concluded that the dispute between the parties was "ineligible for resolution by appraisal" because the Policy allowed for appraisal only in the event that the parties "fail to agree as to the amount of the loss." *Id*. Scottsdale contended that the dispute did not concern "what the period of recovery should have been," but rather "Altman's contention that the period of recovery should be extended based on [Scottsdale's] alleged withholding of certain payments." *Id*. According to Scottsdale, the dispute was a "coverage or purely legal question, one that must be reserved for the courts." *Id*. Scottsdale also objected to Altman's designated appraiser, Mr. Levin, as Scottsdale asserted that Mr. Levin did not meet the Policy requirements of being "disinterested" given Globe's contract with Altman as its public adjuster.[1] *Id*.

**II.**

---

[1] This issue has since been resolved because "Altman has withdrawn Robert Levin as its appraiser and in his place has nominated Gerald Kolb…". Def.'s Mot. Dismiss, ECF No. 4 at PageID.107.

Scottsdale filed a Complaint for Declaratory Judgment. ECF No. 1. It sought declaratory judgment on the following issues:

A. That the question of whether Altman's period of recovery could be extended due to Scottsdale's alleged delay in agreeing to make payments is a legal question that is not within the scope of the appraisal process;

B. That Altman incorrectly and improperly invoked the Policy's appraisal provision, which is hereby null and void;

C. That, as a matter of law, Scottsdale's alleged delay in agreeing to make payments to Altman cannot extend Altman's period of recovery;

D. That Mr. Levin is not a "disinterested" appraiser as required by the Policy;…

ECF No. 1 at PageID.7. In response, Altman filed a Motion to Dismiss Scottsdale's claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 4.

The Court began its analysis by explaining that "[c]ourts are to interpret the policy coverage of fire insurance agreements, but disagreements regarding the actual cash value or amount of loss may be determined by appraisers." ECF No. 9 at PageID.187. The Court found that:

> Scottsdale correctly argues that the question of whether the period of recovery under the policy may be extended because of an insurer's delay in payment raises a question of policy interpretation and thus, a question of law. Sound legal authority, however, supports the proposition that the period of recovery may be extended if caused in substantial part by a delay in payment by an insurer. Appraisers, however, can make the factual determination of whether payment was withheld and how much weight that factor should bear in assessing the length of the period of recovery.

*Id.* at PageID.189.

The Court then summarized four different district court opinions that came to similar conclusions. *See UrbCamCom/WSU I, LLC v. Lexington Ins. Co.*, 2014 WL 1652201 (E.D. Mich. Apr. 23, 2014); *Amerex Group, Inc. v. Lexington Ins. Co.*, 678 F.3d 193, 205 (2d Cir. 2012); *G&S*

*Metal Consultants, Inc. v. Cont'l Cas. Co.*, 200 F.Supp. 3d 760, 771 (N.D. Ind. 2016); *United Land Inv'rs, Inc. v. N. Ins. Co. of Am.*, 476 So.2d 432, 438 (La.Ct.App. 1985). The Court held that:

> The determination of the restoration period is a factual question about damages. Among the factors the appraiser may consider is whether Scottsdale delayed paying the claim or providing contractors with reasonable assurances of payment and if so, whether the delay should extend the restoration period. Indeed, this is not a remarkable principle. Providing otherwise would create an incentive for insurers to delay or hinder covered payments in order to limit the insured's period of reconstruction coverage. Michigan law has always presumed and required the good faith performance of both parties to a contract agreement. *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (1992) ("[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.").
>
> Determining whether Scottsdale delayed payment and how much weight that should bear on the length of the restoration period is however a factual question appropriately addressed by the appraisers.

ECF No. 9 at PageID.191. On that basis, the Court granted Altman's motion to dismiss in part, entered Scottsdale's requested Declaratory Judgment in part, and dismissed the remainder of Altman's complaint.

**III.**

Scottsdale has now filed a Motion to Reconsider. ECF No. 15. Pursuant to Eastern District of Michigan Local Rule 7.1(h), a party can file a motion for reconsideration of a previous order, but must do so within fourteen days of the order's entry. A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correcting the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakable, manifest, or plain." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 1997)). "[T]he Court will not grant motions for rehearing or reconsideration that merely present

the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3). *See also Bowens v. Terris*, No. 2:15-CV-10203, 2015 WL 3441531, at *1 (E.D. Mich. May 28, 2015).

## IV.

### A.

Scottsdale contends that the Court erred because it addressed an issue that Altman did not raise in its Motion to Dismiss, specifically whether Scottsdale's alleged delays in making payments could extend the period of recovery. ECF No. 15 at PageID.210-211.

To resolve Altman's motion to dismiss, the Court had to first decide as a legal matter whether an appraiser could consider an alleged delay in payments when determining a period of recovery. The Court concluded as a legal matter that an appraiser could consider an alleged delay in payments when determining a period of recovery. Accordingly, the Court's finding addressed both Altman's Motion to Dismiss and Scottsdale's request for Declaratory Judgment. The Court properly dismissed the remainder of Scottdale's complaint.

Scottsdale argues that "nowhere in Altman's Motion did it ask the Court to affirmatively decide whether Scottsdale's delay in agreeing to construction repair estimates or making payments to Altman, as a matter of law, extends the period of recovery following the fire at the apartment complex." ECF No. 15 at PageID.210. It is unclear why Scottsdale makes this argument because the Court did not decide whether Scottsdale's alleged delays in payment extended the period of recovery. To the contrary, the Court decided that the appraiser should make that determination, not the Court. ECF No. 9 at PageID.191 ("Determining whether Scottsdale delayed payment and how much weight that should bear on the length of the restoration period is however a factual question appropriately addressed by the appraisers."). The Court only determined that as a legal

matter, the appraiser *could* (but was not required to) consider Scottsdale's alleged delay in payments in determining the period of recovery.

**B.**

Scottsdale further argues that the Court erred by not deciding whether Scottsdale unreasonably withheld payment from Altman. Its motion provides:

> For the appraisal panel to factor insurer delay into the calculation of the period of recovery, there must first be a finding that the insurer unreasonably withheld payments, a question of law, and that the withheld payments played a substantial part in the delay of the project, a question of law.

ECF No. 15 at PageID.212.

Scottsdale has not furnished any legal authority that requires a court to assess the reasonableness of an insurer's actions before an appraiser determines the period of recovery. Scottsdale further neglects to explain how its argument is consistent with the legal authority cited by the Court in its opinion. The Court cited four different cases in which the courts found that appraisers were best situated to resolve factual questions in determining periods of recovery.

Scottsdale further argues that prior to referring the question of period of recovery to an appraiser, the Court must decide "the question of whether an insurer's delay in advancing payments actually caused a construction project to not be timely completed." ECF No. 15 at PageID.213. Such an inquiry is inherently factual, not legal, and best conducted by an appraiser. Furthermore, Scottsdale again does not address the legal authority cited in the Court's prior opinion nor does it furnish any legal authority to support its argument that a court must make such a determination prior to referring the matter to an appraiser.

Scottsdale has not demonstrated in the Court's view that it committed palpable error in its opinion and order.

**V.**

Accordingly, it is **ORDERED** that Scottsdale's Motion for Reconsideration, ECF No. 15, is **DENIED**.

Dated: March 25, 2020
<span style="float:right">s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge</span>